IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DR. MATTHIAS RATH, DR. RATH INTERNATIONAL, INC., and DR. RATH HEALTH PROGRAMS B.V., <br><br> Plaintiffs, <br><br> v. <br><br> VITA SANOTEC, INC., VITA SANOTEC B.V., and FRANK KRÄLING, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 17-953 (MN) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Richard D. Heins, Tiffany Geyer Lydon, ASHBY & GEDDES, Wilmington, DE; Enrique D. Arana, CARLTON FIELDS, P.A., Miami, FL – Attorneys for Plaintiffs

October 2, 2020
Wilmington, DE



**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is the motion of Plaintiffs Dr. Matthias Rath, Dr. Rath International and Dr. Rath Health Programs B.V. ("Plaintiffs") requesting that attorneys' fees be assessed against Defendants Vita Sanotec, Inc. Vita Sanotec B.V and Frank Kräling. (D.I. 49).[1] Defendants have not filed an opposition. For the reasons set forth below, the Court will GRANT the motion.

## I.     BACKGROUND

Plaintiffs are the owners of a number of trademarks that they use in business, including the federally registered trademark "Matthias Rath" and variations thereof, both in the United States and in Europe. (D.I. 1 ¶¶ 18-21). Plaintiffs have the exclusive right to use the name, research, and/or likeness of Dr. Rath for commercial and advertising purposes, and they also have the exclusive right to use the "Matthias Rath" mark and variations of it in commerce. (*Id.* ¶ 21). According to the Complaint, in or around 2014, Defendants published and disseminated a German language brochure ("the Brochure") advertising a vitamin product called "Vital Ultra." (*Id.* ¶¶ 22 & 26). The Brochure contained Dr. Rath's name and likeness, the "Matthias Rath" mark, and Plaintiffs' research without permission or consent. (*Id.*).

Thereafter, on July 14, 2017, Plaintiffs filed this case against Defendants, alleging claims for misappropriation of Plaintiffs' intellectual property and violations of the Lanham Act, 15 U.S.C. § 1125 *et seq.* On September 1, 2017, Defendants filed a Motion to Dismiss. (*See* D.I. 11). Plaintiffs opposed the motion.

---

[1]   This is Plaintiffs' renewed motion for attorneys' fees. The prior motion (D.I. 39) was denied without prejudice to renew (D.I. 48) after the Magistrate Judge issued a Report and Recommendation ("the Report") recommending denial of the motion (D.I. 45) and Plaintiffs' objections to the Report (D.I. 47) were overruled for improperly raising arguments that had not been presented to the Magistrate Judge.

According to Plaintiffs, "[i]n the months that followed, Plaintiffs endeavored to pursue discovery and move this case forward in an effort to protect their marks and intellectual property and prevent any further misappropriation." (D.I. 50 at 5). This included a telephone conference to discuss the schedule and service of a request for production of documents and a deposition notice. (*Id.*). Defendants, however, refused to produce documents or submit to depositions until the Court addressed their pending motion. (*Id.*). Before the parties were able to address the discovery issues with the Court, Defendants' counsel, Berger Harris, advised Plaintiffs that their representation had been terminated (*id.*) and, on February 21, 2018, Defendants' counsel moved to withdraw (D.I. 23). On March 15, 2018, the Court issued an oral order denying Berger Harris's Motion to withdraw, explaining that "[a] corporate entity must be represented by counsel" and noting that "the court will grant the Motion upon entry of appearance by new counsel for the Defendants." Defendants did not retain new counsel.

On March 26, 2018, Berger Harris moved for reconsideration of the Court's order on their motion to withdraw indicating that, since Defendants terminated the representation, counsel had "not received any further communications from the Defendants, and no longer ha[d] the authority to act on the Defendants' behalf." (D.I. 28 ¶ 28). In response, Plaintiffs explained that they did "not object to Berger Harris' Motion for Reconsideration of its request to withdraw" but requested that the Court order Defendants to retain new counsel by a date certain – April 23, 2018." (D.I. 29 ¶ 8). On May 2, 2018, the Court granted Berger Harris's Motion for Reconsideration, terminated their representation of Defendants and ordered Defendants to retain new counsel to defend the action by May 23, 2018. Defendants did not retain new counsel and have not participated in this case since May of 2018.

2

On July 16, 2018, Plaintiffs filed a Motion for Entry of Default.  (D.I. 30).  Default was entered on July 31, 2018.  (D.I. 31).  That same day, the Court entered an oral order requiring Plaintiffs to "transmit a copy of the Clerk's Entry of Default to the defendants and file a certificate of service indicating how and where it was transmitted."  Plaintiffs filed the requisite Certificate of Service on August 7, 2018.  (D.I. 32).

On August 14, 2018, Plaintiffs moved for entry of default judgment.  (*See* D.I. 34 & 35).  That motion was granted on September 5, 2018, and the order granting the motion permanently enjoined Defendants from infringing Plaintiffs' marks and intellectual property and, further, stated that Plaintiffs reserve their rights to seek damages and attorneys' fees.  (D.I. 36).

More than a year later, on August 18, 2019, Plaintiffs filed their motion seeking attorneys' fees with supporting documentation.  (*See* D.I. 39, 40, 41 & 42).  Defendants did not oppose or otherwise respond to the motion.  The motion was referred to Chief Magistrate Judge Thynge, who issued the Report recommending that Plaintiffs' motion be denied because it had been filed outside of "the usual 14-day filing window."  (D.I. 45).  Two weeks later, Plaintiffs filed a motion seeking entry of "final judgment."  (D.I. 46).  Three weeks after that motion, Plaintiffs filed objections to the Report (D.I. 47), asserting that the default judgment (D.I. 36) – which allowed Plaintiffs to reserve their rights to seek damages and attorneys' fees – was not a final judgment that triggered the fourteen-day period within which to move for fees pursuant to Rule 54(d), and therefore Plaintiffs' motion for fees motion was timely.  (D.I. 47).  Defendants did not respond to the objections, but this Court overruled them because the arguments asserted in the objections had not been raised before the Magistrate Judge.  (D.I. 48).  The Court, however, allowed Plaintiffs to re-file their motion seeking fees.  (*Id.*).  Thereafter, Plaintiffs filed their current motion for fees under the Lanham Act.  (*See* D.I. 49, 50, 51 & 52).  Defendants did not respond to the motion.

3

## II.    LEGAL STANDARD

The Lanham Act provides that the Court may award reasonable attorneys' fees in exceptional cases.  15 U.S.C. § 1117(a).  The Third Circuit has held that the *Octane Fitness* framework for exceptionality and attorneys' fees under the Patent Act applies equally to claims arising under the Lanham Act.  *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) ("We therefore import *Octane Fitness*'s definition of 'exceptionality' into our interpretation of § 35(a) of the Lanham Act.").  "Under *Octane Fitness*, a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"  *Id.* at 315; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.").  Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion.  *Octane Fitness*, 572 U.S. at 554.  A party seeking attorneys' fees must show the case is exceptional by a preponderance of the evidence.  *Id.* at 557-58.  The Court may award attorneys' fees in "the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at 555.

## III.   DISCUSSION

### A.   Timeliness of Plaintiffs' Motion for Attorneys' Fees

Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure provides:

> (B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:

4

>> (i) be filed no later than 14 days after the entry of judgment;
>
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
>
> (iii) state the amount sought or provide a fair estimate of it; and
>
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

The issue before the Court on timeliness is whether the Court's earlier entry of default judgment, which allowed Plaintiffs to reserve their rights to seek damages and attorneys' fees, was a final judgment that triggered the fourteen-day period specified in Rule 54(d)(2)(B). The default judgment was entered pursuant to Rule 55(b). The 2015 Advisory Committee Notes for Rule 55 state: "A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b)." The default judgment entered in this case made clear that it did not dispose of the claim as it related to damages. And the judge who entered the default judgment[2] did not direct the entry under 54(b). Thus, under the circumstances here, this Court will not treat the default judgment entered as a final judgment that triggered the time frame specified in Rule 54(d)(2)(b).[3] Plaintiffs' current motion for fees is therefore not untimely.[4]

---

[2] Judge Gregory Sleet retired on September 30, 2018 and thereafter the case was assigned to the current judge.

[3] Plaintiffs have now addressed their claims as they apply to damages, having "decided not to pursue monetary damages in these proceedings" and have moved for entry of final judgment. (D.I. 46 at 1-2). On October 2, 2020, the Court granted that motion and entered final judgment. (D.I. 53).

[4] The Court recognizes that Plaintiffs' motion was filed prior to entry of final judgment. Although the Court generally would require Plaintiffs to refile their motion after entry of judgment, the circumstances here warrant an exception. Plaintiffs had already requested entry of final judgment when they filed the instant motion within the deadline set by the Court. (*See* D.I. 48 at 3). Rather than require Plaintiffs to file their motion yet again, the Court recognizes that the motion is directed to the final judgment ultimately entered and,

5

### B.      Exceptional Case

Plaintiffs obtained a default judgment permanently enjoining Defendants from infringing Plaintiffs' marks and intellectual property and thus Plaintiffs are the prevailing party in this case. As the prevailing party, Plaintiffs assert that they are entitled to reasonable attorneys' fees because this case is exceptional based on both the merits of the case and the unreasonable manner in which Defendants litigated it.  The Court agrees.

This case is exceptional based on the willful infringement of Plaintiffs' intellectual properly.  "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation omitted).  Here, the Complaint alleges facts to show that Defendants willfully and deliberately infringed Plaintiffs' marks and intellectual property.  Plaintiffs included a certified translation of the Brochure, which used Dr. Rath's name and likeness as well as the Matthias Rath mark, and republished Plaintiffs' research without any indication they had permission or consent.  (D.I. 1 ¶ 22, Ex. A).  Defendants have not denied their infringement or explained how it was anything other than deliberate and willful.

This case is also exceptional based on Defendants' litigation conduct.  Although Defendants initially appeared and filed a motion to dismiss, once discovery began, Defendants refused to participate and then terminated their counsel.  The Court ordered Defendants to retain new counsel, but Defendants ignored the Court's orders and simply stopped participating in the litigation.  Not only did Defendants' conduct show contempt for the Court, but it resulted in

---

in the unique circumstances here, the Court will treat the motion as timely filed within fourteen days of entry of the final judgment.

significant expenditures of Plaintiffs' resources in futile attempts to engage Defendants and in petitioning the Court for entry of default and default judgment. Moreover, apparently following entry of default judgment, Defendant Vita Sanotec, Inc. was dissolved, without any notice to Plaintiffs or the Court. (*See* D.I. 50, Ex. A).

In light of the totality of the circumstances, the Court finds this case to be exceptional based both on the merits and on the unreasonable manner used by Defendants to litigate this case.

### C. Attorneys' Fees

Having determined that the case is exceptional on two bases, the Court next considers whether an award of fees is appropriate.[5] Here, the Court agrees that an award of attorneys' fees is merited. In doing so, the Court follows the reasoning of another court in the Third Circuit that awarded fees for litigating a case in an unreasonable manner where, as here, the defendant has failed to litigate resulting in a default judgment or where a claim of infringement was transformed into protracted litigation as the result of the defendant's conduct. *See, e.g.*, *Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475 (RBK/JS), 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017) ("[The defendant] litigated this case in an unreasonable manner because it both *failed* to litigate and acted culpably by continuing its infringement of [plaintiff's] trademark long after it had knowledge that its mark was confusingly similar . . . ." (emphasis in original)).

Next, the Court turns to the amount of fees. Plaintiffs seek $204,261.31 in attorneys' fees incurred in pursuing this matter and securing a permanent injunction against Defendants' infringement. This amount reflects $179,650.81 incurred by lead counsel, Carlton Fields (D.I. 51

---

[5] Despite finding the present case to be exceptional, the Court need not award any fees at all. *See Icon Health & Fitness, Inc. v. Octane Fitness*, LLC, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases.").

¶ 6), and $24,615.50 incurred by local Delaware counsel, Ashby & Geddes (D.I. 52 ¶ 4). As discussed below, the Court finds these fee amounts to be reasonable.

The starting point for calculating reasonable attorneys' fees is the lodestar figure, equivalent to the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Princeton Dig. Image Corp. v. Office Depot Inc.*, No. 13-408, 2017 WL 446122, at *3 (D. Del. Jan. 27, 2017) (citing *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1441 (3d Cir. 1988)). In most cases, a reasonable rate is the prevailing rate in the forum of litigation. *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). This forum-rate rule yields to two exceptions: (1) when the need for "special expertise of counsel from a distant district" is shown and (2) when local counsel is unwilling to handle the case. *Id.* To arrive at a reasonable number of hours, the court must deduct any "excessive, redundant, or otherwise unnecessary" hours billed. *Am. Bd. Internal Med. v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013) (quoting *Evans v. Port Auth.*, 273 F.3d 346, 362 (3d Cir. 2001)). The court can undertake an "hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Am. Bd. Internal Med.*, 540 F. App'x at 107. The party advocating for an adjustment to the lodestar calculation bears the burden of proving an adjustment is needed. *See Princeton Dig. Image Corp.*, 2017 WL 446122, at *3.

As explained in the declarations submitted by Plaintiffs, the amount of fees sought is reasonable. First, the Court agrees that the number of hours expended is reasonable for a complex trademark action. A division of labor was employed in order to discharge the work. Significant time was spent by counsel conducting factual and legal research preparing the Complaint, including issues of jurisdiction over foreign entities and statutes of limitation. Counsel briefed the response to Defendants' motion to dismiss, prepared and served discovery, and dealt with

8

Defendants' failures to engage in discovery. Plaintiffs expended significant time addressing motions to withdraw by Defendants' counsel and seeking entry of default and default judgment. Plaintiffs' counsel spent time preparing proceedings, including certain discovery, that were ultimately never undertaken as a result of Defendants' failure to litigate the case after being ordered to substitute counsel. Following entry of default judgment, counsel expended additional effort in researching damages issues and seeking fees.[6]

Similarly, the Court finds that the hourly rates are reasonable. The hourly rates for Miami-based counsel and Delaware-based counsel are reasonable for those metropolitan areas and commensurate with the respective levels of experience of counsel, which are set forth in detail in the declarations submitted. (D.I. 51 & 52). Additionally, the billing rates for Miami-based counsel reflect discounted rates for a number of the attorneys, including lead counsel. (*See, e.g.*, D.I. 51 ¶ 4). Indeed, it appears that Plaintiffs were offered several discounts throughout the litigation, amounting to more than $40,000.00. (*Id.*).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Renewed Motion for Attorneys' Fees (D.I. 49) is GRANTED. Plaintiffs are awarded $204,261.31 in attorneys' fees. An appropriate order will follow.

---

[6] Citing *Rollison v. Biggs*, 656 F. Supp. 1204, 1209 (D. Del. 1987), Plaintiffs seek fees for preparing their motions for fees. The Court will grant that request in-part and allow Plaintiffs to submit the amount of fees spent in preparing the instant (successful) motion and supporting documents. The Court will not allow fees for work done solely in preparing its earlier motion for fees (D.I. 40) or for work done preparing the objections to the Report denying that motion (D.I. 47).

9